IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **LEONDRA LACHELLE KING-HENRY**  §<br>§<br>   Plaintiff, §<br>§        C. A. No.<br>v. §<br>§<br>**HARRIS COUNTY DEPARTMENT OF** §<br>**EDUCATION** §<br>§<br>§<br>§        (Jury Demanded)<br>   **Defendant** § | |

### PLAINTIFF'S ORGINIAL COMPLAINT

**TO THE HONORABLE JUDGE:**

**COMES NOW** Plaintiff, Leondra Lachelle King-Henry, filing this Original Complaint complaining of Defendant, Harris County Department Of Education and in support thereof would show as follows:

### I.

### JURISDICTION, PARTIES AND VENUE

1.   This Court has jurisdiction over the causes of action asserted by Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.; 42 U.S.C. § 2000e5(f), 28 U.S.C. §§ 1331 and 1343(a)(4), 29 U.S.C. 2615 (a)(1)(2), and 42 U.S.C. § 1981a(a)(1).

2.   Venue is proper in this district pursuant to 42 U.S.C. § 2000e5(f) and 28 U.S.C. § 1391(b)(1)(2) & (c)(2). Defendant, Harris County Department Of Education operates several school/education locations in the Southern District of Texas. This establishes minimum contacts with the area encompassing the Southern District of Texas and, all or a substantial part of the unlawful acts set for below occurred in this district.

3.   Plaintiff, Leondra Lachelle King-Henry (hereinafter "Plaintiff"), is an individual who

1

resides in Humble, Harris County, Texas. Plaintiff is a member of a group protected by Title VII and the Fair Labor Standards and was at all relevant times an employee within the meaning of the applicable statutes.

4. Harris County Department Of Education (hereinafter "Defendant") regularly conducts business in the State of Texas. Defendant Harris County Department Of Education was at all relevant times an employer within the meaning of the Fair Labor Standards Act

5. The causes of action complained of herein wholly arose in the Southern District of Texas, Houston Division.

6. Defendant, Harris County Department Of Education is an employer in accordance with 29 U.S.C. § 2611(4)(A)(i-ii).

7. At the time of the incidents giving rise to this complaint, the plaintiff was an employee in accordance with 29 U.S.C. 2611(2)(A)(i-ii).

## II.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"). In said charge, Plaintiff asserted that she was subjected to discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964, as amended, because of her race (African American / black), retaliation, hostile work environment, gender (female), nationality-African American, and violations of the Fair Labor Standards Act.

9. The EEOC issued a Right to Sue Notice authorizing this lawsuit on December 16, 2020. Plaintiff has exhausted her administrative remedies and files this suit within the statutory limitations period.

## III.

## FACTUAL BACKGROUND

10. As a traveling Nurse, After reporting to the ABS East campus, in August 2019, I meet the new principal Donna Trevino-Jones. I explained to her that I was previously reporting on Mondays and Tuesdays and to report to the campus 5 days a week would create a hardship. I asked her if I could come in 15 minutes early and leave 15 minutes early to ensure that I would be able to pick up my son from school on time and she said, "No."

11. Due to the clash of protocol and procedure of school administration versus applicable nursing standards, between myself and the Principal Trevino-Jones, I was forced to file a level one grievance on 9/26/19 regarding the matters discussed more fully below.

12. Specifically, as one example of the environment and issues I faced, I spoke with Principal Trevino Jones about the hiring of a new nurse, and she expressed that we should both share a space in the same clinic downstairs. I suggested that a nurse be available to students on the second floor. She agreed it would be okay if could find an office space on the 2nd floor. I informed Trevino Jones that I located a space upstairs and that there were tiles that needed to be replaced in the ceiling and that light bulbs were out. Her reply was to send her an email to remind her to put an order in for facility services to come out for repairs. I approached Trevino Jones in the cafeteria with Counselor Rayford and Secretary Joseph regarding the repairs and moving to the new office space prior to the new nurse coming onboard.

13. She stated that she did not recall the conversation or requesting that I send her an email regarding facility services. She requested that I schedule a meeting with the clerk to discuss where I would be housed in the building. Also I met with Trevino Jones regarding parent complaints. Specifically, during the meeting she informed me that some parents had made complaints regarding me and that she needed me to stay an additional 2 weeks to train the new nurse. She also informed me that my days would be changed from Monday/Tuesday to Monday/Friday because those are heavy call-in days for her staff.

14. Once the new nurse started, on September 25, 2019 Trevino Jones requested that I violate HCDE policy and leave campus for a student transport with EMS. I informed her of the policy and provided her and the administrative team with a copy of the SOP. Despite meeting with Mr. Mays over my level one grievance in October 2019, I still had to send an email regarding clinic concerns and the lack of policies and protocols being followed within my job site.

15. Nurse Walker was injured on October 24, 2019.

16. I was informed that Ms. Jordan gave a student the wrong medication. Student was able to identify the error. Another grievance was filed by me and an email was sent to the administrative team regarding medication concerns and policies. After the email was sent, Trevino Jones requested a meeting with me and the administrative team at the end of the day. On 10/30/19 I was informed that Trevino Jones sent a student home without having him assessed in the clinic. After calling the parent myself, she informed me that Trevino Jones. stated that the student had a fever. At no time did she come to the clinic to retrieve an assessment tool to take a temperature.

17. I believe Principal Trevino lied to the parent.

18. I filed a Level 2 grievance in November 2019 regarding scheduling and retaliation among other matters. In this instance, all nurses were invited to a professional development with me being excluded. I was told to rep01t to another campus to cover for one nurse that was at the conference hosted at HCDE on Irvington. At the same time 3 other campuses were left without coverage because their nurse was attending the same conference.

19. The next day I was instructed to report to another training which would have required me to train all staff. I was told that I would be scheduled for another training in the future. I was told on 10/22/19 to repo1t to ABS West on 10/29 because the nurse would be out for the day. I reported to ABS West on 10/29/19 and was sent an email from Mr. Cooksey stating that he called and text me several times and that I needed to call him. The email was titled "Absence."

20. I sent an email asking where I should report to daily since no one knew if the new nurse would be returning after being injured on the job. I was informed per Mr. Cooksey's directive that I should report to ABS East until further notice.

21. In November 2019, I observed a teacher twisting a student's arm. A CPS report was made, and administration was notified. Principal; Trevino Jones made it seem as if I did something wrong.

22. I filed a Level 1 grievance on 11/8/19 regarding near miss with medication. As retaliation, I was denied a time off request to attend a Grief Counseling camp with my son. This day should have been approved, but it was not.

23. Principal Trevino-Jones later sent me an email stating that she did not know how to read the notes and if I resubmit the request, she would approve it, after the fact.

4

24. Despite no meaningful redress from Dr. Mays or the district, to any of my grievances, I expressed my concern again for the lack of immunization compliance and failure to follow HCDE policies. I met with Ms. Mullins (Curriculum Compliance Specialist) and Trevino Jones on 12/12/19 regarding my concerns.

25. On 12/10/19, I discovered that there was a new student on campus with no pape1work and I was unaware that he was enrolling. Trevino Jones turned it against me and gave me a deadline to tum in a delinquent immunization report and to create a list of all students that do not have emergency information cards.
In another incident, Trevino Jones requested that I give her a statement that I received from a student, even though the statement was also retrieved from a staff member who witnessed the incident.

26. In January 2020 I was written up for not providing the student statement timely as requested.
On 1/14/20 I received an email from Trevino Jones alleging that I gave a student medication late. I was later reprimanded on 1/22/20 for allegedly violating FERP A according to Dr. Mays.
On 1/15/20 a student did not receive his medication due to an off-campus field trip that I was not informed about, yet I still was involved.

27. I filed yet another Level 1 grievance on 1/15/20 regarding Trevino Jones's constant harassment, creating a hostile work environment and making false claims against me.
I filed grievance after grievance. The district and all its management ignored me and allowed my work environment to be beyond bearable. I finally resigned on January 24, 2020.

28. The effect of the practices complained of in the succeeding paragraphs, in accordance with the statutory basis, stated above, has been to deprive the Plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of her race (African American / black), retaliation, hostile work environment, gender (female), nationality-African American, and violations of the Fair Labor Standards Act

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

*Violation of Title VII - Disparate Treatment*

29. Plaintiff repeats and realleges the allegations contained in the foregoing, paragraphs 1

5

through 28.

30. Defendant, via its employees engaged in discriminatory behavior towards the plaintiff, based upon her sex, race, gender, and nationality, by creating a hostile work environment. The plaintiff was subjected to differential treatment by Principal Jones and higher management officials of the employer, and it is asserted upon information belief, that others outside of the Plaintiff's class-African American females nurses, were treated more favorably than the plaintiff.

31. It is asserted that officials of the Defendant were derelict in their duty to investigate the complaints of the plaintiff. As a nurse, the plaintiff had a different protocol to follow in addition to the school district/principal's directive-the Nursing Practices Act.

32. The Defendant's discriminatory practices described above have denied the Plaintiff promotional opportunities if any, compensation, and continued employment to which she was otherwise entitled. The plaintiff was in a no-win situation, (1) if she complained about Principal Trevino' s complete lack of regard for the plaintiff's duty as a nurse and the principal's' constantly violating it by managing her school with no regard to nursing protocols and needs, she would be verbally assaulted, written up. isolated, threatened with termination and harassed some more, or (2) if she risked it. And did what the principal wanted done, and under they way she anted it done, even though it was against nursing protocol, she would be violating the Nursing Practice Act and could lose her nursing license.

The plaintiff was treated like a non-nurse and humiliated for being a black nurse. The conditions for which the plaintiff was so severe she was forced to seek employment elsewhere so as to keep from losing her nursing license and putting it any further potential jeopardy. This conduct has resulted in emotional distress and other harm for which entitles the plaintiff to compensation.

33. The Defendant has undertaken these discriminatory practices willfully or with reckless disregard for the rights of Plaintiff. Such rights are protected under 42 U.S.C. § 1981(a)(a)(1).

34. These employment practices violated § 703 of Title VII of the Civil Rights Act of 1964, as amended. The actions of the Defendant were conducted through their agents. The respondeat

6

superior principles construed under the herein aforementioned statute(s) are hereby invoked for the liability of the Defendant for its agents who engaged in the prohibited discriminatory behavior.

## SECOND CLAIM FOR RELIEF

*Violation of Title VII - Disparate Impact*

35. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs 1 through 34.

36. Defendant engaged in a prohibited activity when it applied its professional training policies including training for staff, nurse training, and school administration policies against the Plaintiff in a discriminatory manner. It is alleged upon information and belief that the plaintiff and other similarly situated African females' nurses, females were treated differently in regard to this policy because the principal was Latino and black. This conduct took place when the Plaintiff was being harassed before she sought employment elsewhere.

37. The Defendant's discriminatory practices described above have denied the Plaintiff promotional opportunities, compensation, and continued employment to which she was otherwise entitled. This conduct has resulted in emotional distress and other harm for which entitles her to compensation.

38. The Defendants have undertaken these discriminatory practices willfully or with reckless disregard for the rights of Plaintiff. Such rights are protected under 42 U.S.C. § 1981(a)(a)(1).

39. These employment practices violated § 703 of Title VII of the Civil Rights Act of 1964, as amended. The actions of the Defendant were conducted through their agents. The respondeat superior principles construed under the herein aforementioned statute(s) are hereby invoked for the liability of the Defendant for its agents who engaged in the prohibited discriminatory behavior.

## THIRD CLAIM FOR RELIEF

*Violation of Title VII – Retaliation*

40. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs 1

7

through 39.

41. Defendants took disciplinary action against Plaintiff because of the Plaintiff making complaints regarding her hostile work environment allegations contained in paragraphs 1-40, incorporated herein by reference. This disciplinary action was in the form of write-ups, fraudulent allegations affecting nursing care, fraud and fraud nursing care assessment, verbal warnings, and threatened disciplinary action.

42. After Plaintiff reported her concerns about the harassment, and the hostile work environment, based upon her protected status (as listed above-African American female nurse, female, black, FLSA)) the Plaintiff was subjected to further retaliation by the Defendant and its agents.

## FOURTH CLAIM FOR RELIEF

43. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs 1 through 42. The Defendants are engaged in the education industry in the State of Texas. The Defendant engages in interstate commerce in accordance with the provisions established under The Fair Labor Standards Act of 1938, *U.S.C. 209 § 201 (203) to 219* et al.

44. The defendant meets the definition of employer under the Fair Labor Standards Act (FLSA) as it relates to the plaintiff's claims of violation(s) of the FLSA in that an employer under FLSA is engaged in interstate commerce or in any industry or activity affecting commerce, The plaintiff claims that this requirement is met.

45. The plaintiff alleges that she was employed by the employer and that she was employed in a confusing non-salaried/salaried position

46. The plaintiff asserts that she was treated as an hourly employee when she should have been treated as a salaried employee, vice versus, off and on throughput her employment.

47. The plaintiff is possibly due wages when she was classified as an exempt employee, but this exemption was not meet, respected or utilized and she was retaliated for complaining about such behavior.

48. The plaintiff is, upon information and belief, is possibly due overtime for this rampant misclassification confusion in application and potential form.

49. Furthermore, it is asserted that the defendant's conduct was willful.

50. In violation of the FLSA as alleged herein, by way of one example only, the Defendant made efforts to appear in compliance with the salary exemptions, but in substance they treated the exemption as a smoke screen and instead "did as they pleased".

51. The acts complained about above and herein were done with Defendant tacit approval and were done in contravention of the plaintiff's protected status under the Fair Labor Standards Act.

## V.

## JURY DEMAND

52. Plaintiff requests that this action be heard before a jury.

## VI.

## DAMAGES

53. Defendant's conduct constitutes violations of statutory law. That unlawful conduct seriously affected Plaintiff in her occupation, trade, and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will suffer in the future humiliation, mental anxiety, stress, and other damages. Accordingly, Plaintiff seeks all general, special, incidental, and consequential damages available, all in an amount to be proved at trial.

54. Because of Defendant's unlawful conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent her. Plaintiff has agreed to pay the attorney reasonable attorney's fees for the preparation and trial of the causes, and further for any appeal thereof should same become necessary.

55. Additionally, Plaintiff has suffered out-of-pocket expenses, which include litigation costs, (including experts) and other expenses to preserve his ability to earn a living.

Accordingly, Plaintiff seeks all general, special, incidental, and consequential damages as shall be proven at trial.

56. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law if Defendant does not promptly tender damages assessed against them and to avoid unjustly enriching Defendant.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff has judgment against Defendant for all claims listed herein together with:

a. Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Plaintiff's civil rights.

b. All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement, front pay, statutory relief at law, and equity.

c. Compensatory damages for pain and mental suffering.

d. Reasonable attorney's fees, with conditional awards in the event of appeal;

e. Pre-judgment interest at the highest rate permitted by law;

f. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

g. Costs of court; and

h. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any amendment hereto.

Respectfully submitted,

Law Office of Derrick D. King
5020 Ave. H
Rosenberg, Texas 77471
713-762-7158 Office
713-481-0814 Fax

By: *D King* _____
Derrick D. King
State Bar No. 24036911
Federal Bar No. 35274
Attorney for Plaintiff
Leondra Lachelle King-Henry

11